## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ORIN A. FRASER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  No.  15-cv-1226 |
| vs. | ) |
| | )  **JURY DEMAND** |
| JESSE WHITE, in his official capacity as | ) |
| the Illinois Secretary of State, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Orin A. Fraser, by and through his attorneys, Jennifer M. Sender, Scott D. Spears, and Andrés J. Gallegos of Robbins, Salomon and Patt, Ltd., complains of Defendant, Jesse White, in his official capacity as the Illinois Secretary of State, as follows:

## INTRODUCTION

1.      Anxiety disorders, including post-traumatic stress disorder, obsessive-compulsive disorder, and panic disorder are among the most common mental disorders experienced by Americans.[1] Approximately 6 million American adults experience panic disorder each year.[2] Panic disorder is diagnosed in people who experience spontaneous "panic attacks" and are preoccupied with the fear of a recurring attack. A "panic attack" is an abrupt surge of intense fear or intense discomfort that reaches a peak within minutes, and during which time four (or more) of the following symptoms occur: palpitations, pounding heart, or accelerated heart rate; sweating; trembling or shaking; sensations or shortness of breath or smothering, feelings of

---

[1] *See* What is Anxiety Disorder? National Institute of Mental Health. Available at: http://www.nimh.nih.gov/health/topics/anxiety-disorders/index.shtml.
[2] Understanding the Facts, Panic Disorder & Agoraphobia, Anxiety and Depression Association of America. Available at: http://www.adaa.org/understanding-anxiety/panic-disorder-agoraphobia.

choking, chest pain or discomfort, nausea or abdominal distress, feeling dizzy, unsteady, light-headed or faint; chills or heat sensation; paresthesias (numbness or tingling sensation); derealization (feelings of unreality) or depersonalization (feeling detached from oneself); fear of losing control or "going crazy"; or fear of dying.[3]

2.      Agoraphobia is an extreme form of an anxiety disorder. According to the American Psychiatric Association, every year, approximately 1.7% of adolescents and adults have a diagnosis of agoraphobia.[4] The essential feature of agoraphobia is intense fear or anxiety triggered by the real or anticipated exposure to a wide range of situations. While not exhaustive, the diagnosis requires endorsement of symptoms occurring in at least two of the following five situations, although other situations may be feared: using public transportation, such as automobiles, buses, trains, ships, or planes; being in open spaces, such as parking lots, marketplaces, or bridges; being in enclosed spaces, such as shops, theaters, or cinemas; standing in line or being in a crowd; or being outside of the home alone. When experiencing fear and anxiety cued by such situations, individuals typically experience thoughts that something terrible might happen. Individuals frequently believe that escape from such situations might be difficult (e.g., "can't get out of here") or that help might be unavailable (*e.g.*, "there is nobody to help

---

[3] DSM-V, Criteria for Panic Disorder, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013). Available at:
http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm05#BABICDCA.

[4] Chapter 12, Anxiety Disorders, The American Psychiatric Publishing Textbook of Psychiatry, Sixth Edition. March 2014. Available at:
http://psychiatryonline.org/doi/full/10.1176/appi.books.9781585625031.rh12#x44821.8031342.

2

me") when panic-like symptoms or other incapacitating or embarrassing symptoms occur (*e.g.*, vomiting and inflammatory bowel symptoms).[5]

3. Agoraphobia by itself can be considerably disabling, but when it is combined with severe panic, it can be extremely debilitating. Persons suffering from agoraphobia with panic often confine their activity to limited geographic locations in constant anticipation of a panic attack. As a result, some people find it impossible to travel beyond their self-defined safety zones without suffering severe anxiety. Such is the case here for the Plaintiff.

4. Since 1981, Plaintiff has been living with agoraphobia with panic. That condition has been complicated as a result of his obsessive-compulsive symptoms and post-traumatic stress disorder, which was diagnosed in 1990. He has extreme fear using public transportation (he last used a plane in 1981, a train in 1981, and last used a bus in 1983), being in an automobile, and being in open spaces. In those situations, Plaintiff experiences extreme shortness of breath, dizziness, chest pains, nausea and other debilitating physical symptoms. As a result, Plaintiff's safety zone is limited to one square block – East 53rd Street to the North, South Ellis Avenue to the West, East 54th Street to the South, and South Greenwood Avenue to the East – which encompasses his personal residence at 5311 South Ellis Avenue in Chicago, Illinois. Travel beyond that safety zone may result in severe, incapacitating panic.

5. Due to his condition, Plaintiff must have groceries delivered to his home, and he receives all pastoral, medical, dental and optical treatment and care at his home. Plaintiff's medical condition has rendered him homebound. For the past 23 years, Plaintiff has been under

---

[5]DSM-5, Agoraphobia Diagnostic Criteria, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013). Available at:
http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm05#BABICDCA

the care and treatment of an Illinois licensed physician who treats Plaintiff's agoraphobia with panic at Plaintiff's home on a monthly basis.

6.      Due to his condition, when Plaintiff was naturalized as a U.S. citizen on March 16, 2012, that ceremony occurred at his home. Upon learning of Plaintiff's disability, the Department of Homeland Security and U.S. Citizenship and Immigration Service readily approved Plaintiff's request for those services to be provided at his personal residence. They performed the required biometrics, personal interview, and the oath of citizenship to Plaintiff in his dining room.

7.      Since April 2012, Plaintiff has made repeated requests to Defendant's office to secure a state identification card, complete with photograph, by having that service provided at his personal residence. The Secretary of State employs mobile units that are designed to bring a variety of office services directly to the community, including identification card issuance, renewal or duplicate; driver's license duplicate, correction or renewal.

8.      The Secretary of State is mandated, pursuant to the Illinois Identification Card Act (the "ID Card Act"), to issue a standard Illinois identification card to any natural person who, *inter alia,* is a resident of the State of Illinois who applies for such card, or renewal thereof, 15 ILCS 335/4(a). The ID Card Act further provides that "... [t]he card shall be prepared and supplied by the Secretary of State and shall include a 'photograph' and signature or mark of the applicant. However, the Secretary of State may provide by rule for the issuance of Illinois identification cards without photographs if the applicant has a bona fide religious objection to being photographed or to the display of his or her photograph." *Id.*[6] As used in the ID Card Act,

---

[6]The ID Card Act also mandates the Secretary of State to issue a special Illinois identification card, known as an Illinois Person with a Disability Identification Card, to any natural person who is a resident of the State of Illinois, who is a person with a disability as defined in Section 4A of the ID Card Act, who applies for such card. 15 ILCS

"photograph" means any color photograph or digitally produced and captured image of an applicant for an identification card, and "signature" means the name of a person as written by that person and captured in a manner acceptable to the Secretary of State. *Id.*

9.    To attain an Illinois identification card, the applicant must: (a) be a natural person who is a resident of the state of Illinois; (b) file an application for identification card; (c) be photographed, unless the Secretary of State has provided by rule for the issuance of identification cards without photographs and the applicant is deemed eligible for identification card without a photograph under terms and conditions imposed by the Secretary of State. 15 ILCS 335/5(a). The applicant must also surrender any valid foreign state identification card, license or permit, 15 ILCS 335/4, and pay the applicable fee. 15 ILCS 355/12. The applicant must also provide identifying documents that satisfies each Group A (Written Signature), Group B (Date of Birth) and Group C (Social Security Number) and two documents that satisfy Group D (Residency).[7]

10.    Plaintiff meets all of the legal requirements to attain a state identification card, namely: (a) he is a natural person who is a resident of the state of Illinois; (b) can tender an application for identification card (requiring the provision of the applicant's legal name, residence address and zip code, Social Security number, birth date, sex and a brief description of the applicant); and (c) be photographed. Plaintiff does not have any valid foreign state identification card, license or permit to surrender and can pay the applicable fee. Plaintiff can also provide identifying documents that satisfies each Group A (Written Signature), namely, his Social Security Card; Group B (Date of Birth), namely, his birth certificate; and Group C (Social

---

335/4(b).The card also is required to include a photograph and signature or mark of the applicant. *Id.* Plaintiff has not sought nor does he seek here the issuance of an Illinois Person with a Disability Identification Card.
[7] Illinois 2014 Rules of the Road, Available at:
http://www.cyberdriveillinois.com/publications/pdf_publications/dsd_a112.pdf

Security Number), namely, his Social Security Card; and can provide two documents that satisfy Group D (Residency), namely, his cable TV bill and utility bill.[8]

11.    Administrative rules enacted by the Secretary of State permit exemptions of a full-faced photograph for driver's licenses, but not identification cards, for established religious convictions, facial disfigurement, and for out-of-state residents. 92 Ill. Admin. Code § 1030.90.

12.    Defendant has repeatedly refused Plaintiff's numerous requests to provide the requested service in Plaintiff's residence. Instead, Defendant has offered alternative accommodations and has suggested alternative service locations, which are all outside of Plaintiff's safety zone.

13.    Other states provide identification card service to their citizens who are housebound. For instance, Florida has adopted state identification card issuance procedures for homebound customers. *See* Exhibit A hereto. As part of its voter identification reforms, North Carolina adopted state identification card issuance procedures for homebound citizens in its Senate Bill 712, which became law on July 3, 2013. Maine has also adopted state identification card issuance procedures for homebound customers which permit their mobile units to serve residents in their homes.

14.    Without a state identification card, Plaintiff:

   a.    Is unable to properly comply with important aspects of his recommended course of care. To wit, exposure therapy and cognitive behavioral therapy are important modalities abetting improvement and recovery from agoraphobia and panic disorder, which means that the sufferer must place himself in the uncomfortable situation for as long as is tolerable to become desensitized to the upsetting feelings over time. In order to comply with this therapy, Plaintiff is required to stand outdoors from 5 to 20 minutes to face the distress and learn to cope with the feelings and sensations. However, in doing so, Plaintiff can appear as a suspicious person. As a youthful looking Black male with waist length dreadlocks, he has

---

[8] Illinois 2014 Rules of the Road, Available at:
http://www.cyberdriveillinois.com/publications/pdf_publications/dsd_a112.pdf

faced increased scrutiny for reasons often documented in the media. On several occasions, his apparently "strange" conduct was reported to law enforcement. Plaintiff was and is unable to properly identify himself in those situations;

b.  Has been unable to apply for telecommuting competitive employment. Additionally, employment for which Plaintiff is likely best suited is most available with the Federal government in positions requiring proof of identification and citizenship;

c.  Has been unable, since becoming a naturalized citizen in 2012, to update his Social Security records. The Social Security Administration requires a valid state ID in order to update an applicant's status from lawful permanent resident to naturalized citizen;

d.  Is not able to apply for a mortgage;

e.  Is not able to correct his credit score with any of the credit reporting agencies;

f.  Must maintain existing relationships with current financial institutions even as better opportunities exist elsewhere as he cannot transfer or open new checking or savings accounts with other financial institutions, pursuant to the identification requirements of the USA Patriot Act; and

g.  Cannot resolve multiple claims of fraud perpetrated against him, which are difficult to resolve without proper identification.

15.     For the foregoing reasons, Plaintiff has a greater need for a State of Illinois photo identification card as he must be able to forcefully and conclusively affirm his identity without making a personal appearance.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims alleged herein arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.* Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

18.     Plaintiff is a 54 year old male, who since 1981, has been diagnosed as having a chronic anxiety disorder, agoraphobia with panic. That condition severely limits Plaintiff's ability to function outside of his home to work, socialize, travel, shop, pursue leisure, worship, and participate in rites of passage (funerals, weddings, family reunions, birthday celebrations, graduations, et cetera). Plaintiff's condition has been complicated by his diagnosis on June 1990 of obsessive-compulsive symptoms and post-traumatic stress disorder.

19.     Plaintiff's anxiety is chronic and never fully disappears. It may unpredictably ebb and peak from minute-to-minute, hour-to-hour, or day-to-day, but it is always there. When it is least intense, Plaintiff relies upon a variety of coping skills to go about life as normally as possible but only within his safety zone of one square block radius of his residence.

20.     When the Plaintiff's anxiety is at its peak, and when a panic attack is triggered, it limits his ability to breathe, think, walk and work, all major life activities.

21.     Plaintiff is a person with a disability within the meaning of all applicable statutes.

22.     Plaintiff is a resident of the State of Illinois, where since November 2010 he has resided at 5311 South Ellis Avenue in Chicago, Illinois. He previously resided in an adjacent property from December 2006 to October 2010.

23.     Defendant, Jesse White, is the Illinois Secretary of State and is being sued in his official capacity.

8

## STATEMENT OF FACTS

24.     Plaintiff's agoraphobia with panic is chronic and recurs when Plaintiff anticipates leaving his safety zone, on most occasions when Plaintiff leave his residence, and during periods of elevated stress. Plaintiff's condition is sufficiently disabling that he cannot be, or function when, in open spaces, and has been unable to use public transportation in more than 20 years. During that same period of time, Plaintiff's use of an automobile has been limited to exposure therapy exercises aimed at expanding his range of movement in terms of both distance and duration away from his residence. On the best days, this activity last approximately 30 minutes and involve a clearly prescribed path that was one block east, one block south, two blocks north and two blocks west of Plaintiff's residence. On bad days, Plaintiff is limited to circling the block of his residence. Due to Plaintiff's post-traumatic stress disorder and obsessive-compulsive disorder, specific conditions had to be met in order to use the automobile for exposure therapy, including low traffic, access to alleys in the middle of adjacent blocks in the event of a major panic flare-up, avoiding one way streets that merged into one way streets away from Plaintiff's residence, etc. At no point was the automobile used for transportation from place to place as Plaintiff's condition was so disabling that he feared becoming housebound at a new location if, for example, he exited the vehicle and entered a friend's home for any length of time.

25.     When in open spaces, on public transportation or away from his safety zone, Plaintiff experiences significant distress in the form of panic, feelings of depersonalization, extreme anxiety, anticipation of a profound sense of nakedness, terror, a need to flee, loss of balance, an inability to remain mentally present, an overwhelming urge to simply burrow into the ground and somehow cover up, shortness of breath, dizziness, chest pains, nausea and other debilitating physical symptoms, substantially affecting his ability to breathe, think, walk and

work -- all major life activities. Accordingly, Plaintiff's agoraphobia with panic is a disability entitled to protection under the Americans with Disabilities Act.

26. On April 4, 2012, Plaintiff sent a letter to Bill Bogdan, the Disability Liaison for the Illinois Secretary of State, informing him of Plaintiff's disability and requesting that home services be provided for him to attain an Illinois state identification card, attached as Exhibit B hereto. Over the course of the ensuing days and weeks, Plaintiff and Mr. Bogdan had a number of email exchanges and subsequent phone conversations whereby Mr. Bogdan requested certain medical information, which was provided to him by Plaintiff's physician.

27. On May 7, 2012, Plaintiff received a letter from the Illinois Secretary of State, Driver Services, Assistant General Counsel, Brenda Glahn ("Atty. Glahn"), attached as Exhibit C hereto. Atty. Glahn informed Plaintiff that his request for a home visit to issue a state identification card is not "a reasonable accommodation." The letter explained that the "mobile units" require at least a temporary facility that has a minimum 12' x 12' floor space, that ramps are required to move the equipment, which is heavy, and that the facility where the equipment will be used has to support certain unspecified electrical and telephone needs. The letter further informed Plaintiff that the office uses a specialized camera unit that works with software to produce the identification card and, therefore, they are unable to produce an identification card with a picture taken with a different camera. Atty. Glahn offered as a reasonable accommodation for Plaintiff to make an appointment at a Secretary of State facility of his choice at hours either during standard business hours, before opening hours or after closing hours. Because of the extent of Plaintiff's disability, he could not then and cannot now travel to any Secretary of State facility.

28.     After receiving that letter in May 2012, over the next approximate 18 months, Plaintiff attempted to secure the assistance of the Illinois Attorney General's Disability Rights Bureau, and the assistance of various disability rights advocacy organizations, until he secured his present counsel in September 2014.

29.     On October 10, 2014, Plaintiff's counsel sent a letter to Atty. Glahn requesting reasonable modification to its policies and procedures so that it can make arrangements to provide the state identification card issuance services to Plaintiff at his personal residence, attached as Exhibit D hereto.

30.     On November 12, 2014, Atty. Glahn responded to Plaintiff's counsel's October 10, 2014 letter (attached as Exhibit E hereto), and referenced the reasons set forth in her May 2012 letter to Plaintiff as the reasons for which they are still unable to provide the requested services to Plaintiff at his personal residence. The letter also stated that the Secretary of State's staff went to the 5300 block of South Ellis Avenue to determine if there was a suitable location where a mobile unit could be set up to allow Plaintiff to obtain an identification card. Suitable locations include nursing homes, senior centers, government buildings, colleges and universities and community centers. There was no suitable location on that block or any immediately surrounding block. Atty. Glahn offered to have a mobile unit present at a senior health center located approximately 1.2 miles from Plaintiff's home. In addition, Atty. Glahn set forth in her letter that a mobile unit may not be set up at a residence due to unspecified "security concerns" for its employees.

## COUNT I
## VIOLATION OF AMERICAN WITH DISABILITIES ACT
## 42 U.S.C. §§ 12101, ET. SEQ.

31.     Plaintiff repeats and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 30 above.

32.     At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12189, (the "ADA"), and its implementing regulations applicable to public entities, 28 C.F.R. §§ 35.101-35.190, which provides in pertinent part as follows:

a. No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity. 28 C.F.R. § 35.130(a).

b. In providing any aid, benefit, or service, a public entity may not, directly or through contractual, licensing, or other arrangements, on the basis of disability deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service. 28 C.F.R. § 35.130(b)(i).

c. A public entity also must make reasonable modifications in its policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

d. A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities.28 C.F.R. § 35.130(h).

e. As used in the ADA:

    (i)     "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.28 C.F.R. § 35.104;

(ii)     "disability" means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment. *Id.*;

(iii)     "physical or mental impairment" means, *inter alia*, any mental or psychological disorder such as emotional or mental illness. *Id.*; and

(iv)     the phrase "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.*

33.     Defendant's acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

a.   Defendant has discriminated and continues to discriminate against Plaintiff by excluding him from participating in its state identification card services.

b.   Defendant has discriminated and continues to discriminate against Plaintiff by denying him the benefits of its state identification card services.

c.   Defendant has discriminated and continues to discriminate against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its state identification services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

d.   Defendant has discriminated and continues to discriminate against Plaintiff by imposing a safety requirement that is not legitimate or necessary for the safe operation of its state identification card services, as the safety requirement is not based on actual risks, but rather speculation, stereotypes, or generalizations about individuals with disabilities.

34.     Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Defendant will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Plaintiff for which Plaintiff will have no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Plaintiff is entitled to injunctive relief.

35.     Defendant's conduct has inflicted, and its continual conduct inflicts, injury and damages upon Plaintiff, including loss of a civil right, mental anguish, humiliation, loss of employment opportunities, and mental pain and suffering.

36.     Pursuant to 42 U.S.C. § 12133, Plaintiff is also entitled to compensatory damages as the ADA provides that the remedies set forth in Section 505 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, will be the available remedies for discrimination in violation of Title II.

37.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.      A preliminary injunction and a permanent injunction, prohibiting Defendant from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA by modifying its policies and procedures to provide state identification card services to Plaintiff at his personal residence;

b.      A declaration that Defendant is operating in a manner which discriminates against Plaintiff, and that Defendant fails to provide access to its state identification card services to the Plaintiff as required by law;

c.      An award of compensatory monetary damages;

d.      An award of attorneys' fees and costs; and

e.      Such other relief as the Court deems just.

## COUNT II
## VIOLATION OF REHABILITATION ACT
## 29 U.S.C. § 701, ET SEQ.

38.     Plaintiff repeats and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 30 above.

14

39.     At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which, similar to Title II of the ADA, provides in pertinent part as follows:

    a.    "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a); and

    b.    "Program or activity" means all of the operations of a department, agency, special-purpose district, or other instrumentality of a State or of a local government, any part of which is extended Federal financial assistance. 29 U.S.C. § 794(b)(1)(A).

40.     The Seventh Circuit generally construes Title II of the ADA and Section 504 in a related manner "[i]n view of the similarities between the relevant provisions . . . and their implementing regulations," *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

41.     Defendant is a recipient of federal financial assistance for its Library Services Funds[9] and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

42.     By repeatedly refusing to provide Plaintiff, who has chronic agoraphobia with panic that when triggered substantially affects his ability to breathe, think, walk and work, its identification card services at his personal residence, refusing to reasonably modify its policies and procedures to provide services to the homebound, where such modification would not result in a fundamental alteration of the nature of its service, and by asserting speculative and generalized safety concerns, Defendant has discriminated against Plaintiff solely on the basis of

---

[9] In 2013, the Secretary of State received federal grants of $5,664,000 for it Library Services and Technology Program, and $470,000 from the Laura Bush 21st Century Librarian Program. *See* Federal Funds to State Agencies, FY 2011–FY 2013, *Annual Report to the Illinois General Assembly*, Twenty-Second Edition. Publication No. 368, August 2013, Illinois General Assembly Legislative Research Unit. Available at: http://www.ilga.gov/commission/lru/fedman_2013.pdf

disability.

43.     Plaintiff is a qualified individual with a disability and has a civil right to participate in and benefit from the Secretary of State's services, programs, and activities.

44.     Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

   a. Defendant has discriminated and continues to discriminate against Plaintiff by denying him the opportunity for the full and equal enjoyment of its state identification card services.

   b. Defendant has discriminated and continues to discriminate against Plaintiff by denying him the opportunity to participate in or benefit from its state identification services.

   c. Defendant has discriminated and continues to discriminate against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its state identification card services to Plaintiff where such modifications would not fundamentally alter the nature of those services.

   d. Defendant has discriminated and continues to discriminate against Plaintiff by imposing a safety requirement that is not legitimate or necessary for the safe operation of its state identification card services, as the safety requirement is not based on actual risks, but rather speculation, stereotypes, or generalizations about individuals with disabilities.

45.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et seq.*] shall be available" for violations of Section 504 of the Rehabilitation Act, which remedies include compensatory monetary damages.

46.     Defendant's conduct has inflicted, and its continual conduct inflicts, injury and damages upon Plaintiff, including loss of a civil right, mental anguish, humiliation, loss of employment opportunities, and mental pain and suffering.

47.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to Section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.    A declaration that Defendant is operating its state identification card services in a manner which discriminates against Plaintiff and that Defendant fails to provide Plaintiff access to those services as required by law;

b.    A preliminary injunction and a permanent injunction, prohibiting Defendant from violating the Rehabilitation Act, 29 U.S.C. § 794a and compelling Defendant to comply with the Rehabilitation Act by modifying its policies and procedures to provide state identification card services to Plaintiff at his personal residence;

c.    An award of compensatory monetary damages;

d.    An award of attorneys' fees and costs; and

e.    Such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a jury on all claims raised in the Complaint that are triable by jury.

ORIN A. FRASER

By:    /s/ Jennifer M. Sender
One of His Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Scott D. Spears (ARDC No. 6275965)
Attorneys for Plaintiff
ROBBINS, SALOMON & PATT, LTD.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
sspears@rsplaw.com